van Gestel, J.
This matter comes before the Court on a motion pursuant to Mass.R.Civ.P. Rule 12(b)(6) to dismiss all counts of the complaint as against all defendants.
BACKGROUND
The underlying action seeks relief for alleged violations of a non-disparagement provision contained in a settlement agreement. The settlement came about in connection with two cases captioned Boston Partners Asset Management, L.P. v. Wayne Archambo, Suffolk Civil Action No. 01-3078 BLS, and Wayne Archambo v. Boston Partners Asset Management, L.P., Suffolk Civil Action No. 01-3079 BLS. The underlying cases, and their settlement, resolved employee non-competition and non-disclosure issues between Boston Partners Asset Management, L.P. (“Boston Partners”) and one of the defendants here, Wayne Archambo (“Archambo”).
Neither of the other two defendants here, BlackR-ock Capital Management, Inc. (“BCMI”) and BlackR-ock, Inc. (“BlackRock”), were parties to the underlying suits, although BlackRock did execute and become a party to the Settlement Agreement.
Boston Partners is said to be in vigorous commercial competition with BlackRock and Archambo and, for purposes of the present motion, the Court accepts that contention.
Key to this case, and key to this motion, is the non-disparagement clause. It appears in Paragraph 13 of the Settlement Agreement and reads as follows:
It is the intention and agreement of the Parties that there will be no authorized representations or statements made by any of the Parties, including without limitation, those made anonymously, that shall, either directly in the form of oral or written statements or representations to any existing, prospective or potential customer of any other party, or indirectly in the form of oral or written statements or representations made to any investment or other consultant, agent or representative of any existing, prospective or potential customer of a party, or to any representative or agent of the media, disparage any party’s past, present, or future performance, personnel, financial condition or investment advisory or organizational capabilities. The term “disparage” shall mean any statement or representation which, directly or by implication, is intended to harm the reputation of any Party. Nothing contained in this Paragraph 13 shall preclude the Parties from: (i) providing truthful testimony in response to a valid subpoena, court order, regulatory request or other legal process, or (ii) making *40 any truthful oral or written statement in any legal proceeding to which a Party becomes a party or witness, including without limitation, any action to enforce the terms of the Settlement Agreement, or any action filed by any party against another Party which is not released hereunder.
Although not revealed in the complaint here, this Court — which presided over the underlying actions— takes notice of the fact that Boston Partners’ counsel then was the same as its counsel now and Archambo then was represented by Attorney Jeffrey J. Upton of Boston’s Hanify & King. Thus, this Court presumes that the language of the non-disparagement clause was carefully crafted by one of these skilled attorneys and equally carefully scrutinized by the other before any of the signatories to the Settlement Agreement picked up their pens.
The Settlement Agreement was executed on September 7, 2001.
Thereafter, it is alleged in the complaint that starting as early as January 2002,[2] Archambo and another BlackRock employee engaged in activities said to be prohibited by the non-disparagement clause. They are alleged to have stated to a consultant, working for some of Boston Partners’ existing, prospective, or potential customers, that, among other things:
Boston Partners did not have adequate resources in the investment area for the investment products that Boston Partners offered;
Employee morale at Boston Partners was low;
The consultant should expect more employee attrition at Boston Partners in the near future; and
Boston Partners’ investment performance in the 1998-99 time period reflected that Boston Partners was too focused on sales growth and did not put enough emphasis on performance.
It is also alleged in the complaint that each of these statements was intended to, and did in fact, harm Boston Partners.
It is further alleged that when outside counsel for BlackRock was notified of Archambo’s alleged misconduct, such counsel acknowledged that the consultant “may have come away from that meeting with certain misimpressions” and that Boston Partners’ concerns were “discussed with Mr. Archambo who has been reminded of the non-disparagement provisions of the Settlement Agreement, and will abide by those provisions.”
It is then alleged that Archambo, and others from BlackRock, have persisted in making prohibited comments about Boston Partners to its existing, prospective, or potential customers and their consultants.
The complaint in this case includes three counts: Count I, for breach of contract; Count II, for tortious interference with advantageous business relations; and Count III, for violations of G.L.c. 93A, Sec. 11.
DISCUSSION
A Rule 12(b)(6) motion admits all well-pleaded allegations of the complaint, and the Court must accept as true such inferences as may be drawn in the plaintiffs favor. Blank v. Chelmsford Ob/Gyn P.C., 420 Mass. 404, 407 (1995); Natick Auto Sales, Inc. v. Department of Procurement and General Services, 47 Mass.App.Ct. 625, 630 (1999). Of course, conclusions of law from the facts alleged are open for review on a Rule 12(b)(6) motion. The counts in the complaint here, however, are sufficient unless they show beyond doubt that no provable set of facts would entitle the plaintiff to relief. Warner-Lambert Company v. Execuquest Corporation, 427 Mass. 46, 47 (1998); Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 68 (1992). The plaintiff bears a “relatively light burden,” Warner-Lambert Co., supra, 427 Mass. at 47, and must be given the benefit of any doubts. Kipp v. Keuker, 7 Mass.App.Ct. 206, 210 (1979). These are “generous principles,” and the Court will apply them in the way they are intended. Connerty v. Metropolitan District Commission, 398 Mass. 140, 143 (1986).
The defendants attack Count I by arguing that the disparagement of a business, called “commercial disparagement,” also referred to as “injurious falsehood,” does not apply to the factual allegations in the complaint because those allegations are not said to be materially false. The defendants cite to DeCosta v. Viacom, Int’l., Inc., 981 F.2d 602, 610 (1st Cir. 1992), and Dulgarian v. Stone, 420 Mass. 843, 852 (1995), among other cases. They also raise the flag of the First Amendment to anything that would inhibit free speech.
The problem with these arguments is that Count I is not a tort claim for injurious falsehoods, but rather is specifically grounded in alleged breaches of a contractually based non-disparagement clause. Thus, it is compliance with whatever the parties meant by the word “disparage” as they defined it in the Settlement Agreement, not that of the common law, that must be assayed. Further, there is nothing constitutionally offensive in a situation like the present where sophisticated parties, well-represented, agreed to be so bound. Indeed, contracts themselves are afforded a certain degree of protection in the Constitution.
To assist in understanding the situation, the Court restates the key words employed by the parties in Paragraph 13 of the Settlement Agreement, but substitutes in brackets the words chosen by them to define “disparage” for “disparage” itself.
It is the intention and agreement of the Parties that there will be no authorized representations or statements made by any of the Parties ... that... either directly or indirectly ... [is intended to harm the reputation of] any parly’s past, present, or future performance, personnel, financial condition or investment advisory or organizational capabilities.
*41 Whether evidence can be presented that will convince a trier of fact that the statements made by Archambo, or other BlackRock employees, directly or by implication, were intended to harm the reputation of Boston Partners’ past, present, or future performance, personnel, financial condition or investment advisory or organizational capabilities, cannot be ruled out on a Rule 12(b)(6) motion. The allegations in Count I of the complaint cannot, at this time, be said to show beyond doubt that no provable set of facts would entitle the plaintiff to relief. Warner-Lambert Co., supra, 427 Mass. at 47. Thus, as against Archambo and BlackRock, Count I must stand.
The situation is quite different insofar as BCMI is concerned. It was not a signatory to the settlement agreement. It, therefore, cannot be charged with a breach of that contract. The case against BCMI must pass the “injurious falsehood” test found in Restatement (Second) of Torts, Sec. 623A (1977). The allegations of the complaint in no place assert that the statements made were “false or ... in reckless disregard of [their] truth or falsity.” Dulgarian v. Stone, supra, 420 Mass. at 852. Consequently, Count I fails as against BCMI.
If there can be proved a contractual breach of the kind set out in Count I, given the intense competition between Boston Partners and its former employee, Archambo, now working literally across the street for its current competitor, BlackRock,[3] the Court must accept as true such inferences as may be drawn in the plaintiffs favor. One of those inferences — that the making of the statements alleged to be in breach of the contractual prohibition was improper in motive, i.e., to harm Boston Partners’ reputation — is a factually intensive proposition that, at this stage of the case, is enough to support the otherwise adequately pled tor-tious interference claims in Counts II with regard to Archambo and BlackRock. See, e.g., G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272-74 (1991). Thus, Count II stands, for the time being at least, against Archambo and BlackRock.
The c. 93A claims seem on their face quite thin. There is an alleged breach of a non-disparagement clause in a contract, and an inference that the motive for that breach was improper, all said to have caused harm to Boston Partners. Whether that is enough to push this case into the realm of those like Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991), or VMark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 620 (1994), seems a bit of a stretch. But, again, the Court is constrained at this early pleading stage to conclude that Boston Partners has met its “relatively light burden” in contesting a Rule 12(b)(6) motion by Archambo and BlackRock.
However, without a viable underlying breach of contract claim or a sustainable injurious falsehood clam against BCMI, the c. 93A claims must fail against it for the reasons argued in the memoranda in support of the defendants’ motion. See Dulgarian v. Stone, supra 852 Mass. 852-53.
ORDER
For the foregoing reasons the defendants’ motion to dismiss the complaint is DENIED with regard to the defendants Wayne Archambo and BlackRock, Inc. and ALLOWED as to the defendant BlackRock Capital Management, Inc. The denial is without prejudice to moving for dispositive relief after the record herein is fleshed out by discovery.

 The complaint in Paragraph 18 actually says “2001,” which this Court attributes to a typographical or computer keyboard error.

 Nile complaint places Boston Partners at 28 State Street, Boston, and BlackRock at One Boston Place, Boston, which, like 28 State Street, sits at the intersection of State, Court and Washington streets in downtown Boston.